**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JOHN D. McCABE,

        Plaintiff,

        v.

MUTUAL AID AMBULANCE SERVICE, INC.,
        Defendant.

)
)
)
)
)
)
)
)
)
)

2:15-cv-00562-TFM

## MEMORANDUM OPINION AND ORDER OF COURT

Now pending before the Court is the MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE (ECF No. 4), with brief in support filed by Defendant Mutual Aid Ambulance Service, Inc. ("Mutual"). Plaintiff, John McCabe, filed a brief in opposition to the motion (ECF No. 8), to which Mutual filed a reply brief. (ECF No. 9). The motion is ripe for disposition.

### I.    Factual and Procedural Background

As set forth in the Complaint, Mutual is a private, non-profit organization that provides ambulance services in Pennsylvania and is governed by a Board of Directors. McCabe was the former president of Derry Area Ambulance Service, which had merged with Mutual. McCabe served as a member of Mutual's Board of Directors from 1998 until he was removed in April 2014.

In September 2012, a Mutual employee named Richard Ponko filed an employment discrimination charge against Mutual with the U.S. Equal Employment Opportunity Commission ("EEOC"), in which Ponko alleged violations of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA") and retaliation. McCabe became aware

1

of the dispute in May 2013. In June 2013, Ponko filed a complaint in the Federal District Court for the Western District of Pennsylvania.

In December 2013, an attorney for Mutual interviewed McCabe regarding the employment discrimination matter. During the interview, McCabe voiced his support for the employee. McCabe asserts that he told the attorney that the employee and the CEO of the company had been best friends and that the employee was a "good paramedic and the public face" of Mutual. McCabe also allegedly told the attorney that when the Board members asked about the discrimination matter after the November 2013 meeting, the CEO responded, "I have not found a good reason to fire him. Yet." McCabe told the employee to be careful.

At the January 2014 Board meeting, the attorney told the Board that McCabe needed to step down immediately on a leave of absence so as to not hurt Mutual's lawsuit. McCabe agreed to take a leave until the case was resolved.

At the April 2014 Board meeting, a motion was made to amend the Board's By-Laws to require the immediate resignation of any board member(s) who moved out of its service area. McCabe alleges that the amendment was designed to remove him from the Board. McCabe had moved from Derry Borough to Unity Township (which was also served by Mutual) nearly 10 years earlier. Nevertheless, McCabe was removed from the Board upon adoption of the new amendment.

Whereupon, this case was filed in this Court. McCabe asserts claims for: (1) Title VII retaliation; (2) violation of his United States Constitution First Amendment rights; and (3) violation of the Pennsylvania Constitution's protection of free expression. In response, Mutual has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Upon review of a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States has made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*,

556 U.S. at 675). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim."" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing

*Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### III.    Discussion

Mutual contends that the Complaint should be dismissed in its entirety. As to Count I (Title VII retaliation), Mutual argues that McCabe has failed to establish that he was an employee at the time of his discharge and that McCabe did not engage in Title VII protected activity. Mutual contends that Count II (U.S. Constitution First Amendment violation, pursuant to 42 U.S.C. § 1983) must be dismissed because McCabe did not allege a state action. Similarly, Mutual contends that Count III (Pennsylvania Constitution violation) must fail because McCabe has not properly asserted a state action. McCabe maintains that the claims are cognizable. The Court will address those claims seriatim.

### A.  Count I – Title VII Retaliation

McCabe claims that Mutual discriminated against him for his expressed support of Ponko's claim of discrimination under the ADA and ADEA. A prima facie case of illegal retaliation requires a showing of: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.

*EEOC v. Allstate Ins. Co.,* 778 F.3d 444, 449 (3d Cir. 2015). Here, McCabe's Title VII claim is without merit for two independent reasons. First, McCabe did not engage in any Title VII protected activity. Second, he is not an "employee."

To succeed in a Title VII retaliation claim, the Plaintiff must have been engaged in activity protected by Title VII. *See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) ("Title VII's anti-retaliation provisions protect employees who participate in Title VII's statutory protections or otherwise oppose employment practices made unlawful by Title VII"). As alleged in the Complaint, McCabe did not participate in a Title VII investigation or oppose any discrimination under Title VII - rather, Ponko's allegations against Mutual arose under the ADA and ADEA. Thus, the Title VII claim set forth in Count I of the Complaint is clearly without merit.

Plaintiff essentially concedes that he cited the wrong statute and asks for leave to file an amended complaint to assert retaliation claims under the ADA and ADEA. As explained below, the Court will deny leave to amend due to futility. Plaintiff is not within the scope of the retaliation provisions of Title VII, the ADA or the ADEA because he was not an "employee" of Mutual.

The anti-retaliation clause of Title VII makes it unlawful for an employer to retaliate against an employee because he has participated in any investigation or proceeding under the Acts or because he has opposed the employer's discriminatory practices. *See EEOC,* 778 F.3d at 449; 42 U.S.C. § 2000e-3(a). Therefore, the statute requires that a claimant who seeks relief must be an employee. *See Garrett v. Phillips Mills, Inc.,* 721 F.2d 979, 981 (4th Cir. 1983) (requiring that an individual qualify as an "employee" in order to state a claim under Title VII and the ADEA). In fact, "Title VII does not provide for any remedy against individual defendants who

do not qualify as an employer, employment agency, labor organization or joint labor-management committee, [thus] Title VII does not provide a remedy against individual persons for retaliatory conduct in violation of [the] ADA [].” *Warren v. Good,* 2006 WL 1582385, at *19 (W.D.N.Y. May 26, 2006) *aff'd,* 2008 WL 5077004 (2d Cir. Nov. 26, 2008); *see also Pinchas v. USA Deaf Sports Federation, Inc.,* 457 F.Supp.2d 937 (D.S.D. 2006) (holding “[t]he existence of an employer-employee relationship is essential to a Title VII cause of action”).

Thus, the primary consideration here is whether there was an employer-employee relationship between McCabe and Mutual. To determine the existence of employer-employee relationships, courts have historically relied on common law agency principles. *EEOC v. Zippo Mfg. Co.,* 713 F.2d 32, 38 (3d Cir. 1983). In fact, the legislative history of Title VII “militates against distorting traditional concepts of employment relationships.” *Chavero v. Local 241, Div. of the Amalgamated Transit Union,* 787 F.2d 1154, 1156 (7th Cir. 1986). “[W]hen Congress has used the term ‘employee’ without defining it, […] Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine.” *Clackamas Gastroenterology Associates, P.C. v. Wells,* 538 U.S. 440, 445 (2003). Congress did not intend “the term ‘employee’ to include persons who are no more than directors of a corporation or unpaid, inactive officers.” *Chavero,* 787 F.2d at 1156. In fact, Congress “meant to limit the pool of potential Plaintiffs under Title VII; otherwise, any person could sue an ‘employer’ under the statute regardless of whether she actually had an employment relationship with that employer.” *Llampallas v. Mini–Circuits, Inc.,* 163 F.3d 1236, 1243 (11th Cir. 1998).

“The common law standard traditionally used when deciding whether an individual can claim employee status emphasizes the importance of the employer's control over the individual.” *Garrett,* 721 F.2d at 981. However, the Third Circuit has adopted a hybrid approach. *See EEOC*

*v. Zippo Mfg. Co.,* 713 F.2d 32 (3d Cir. 1983). This hybrid approach looks at the "economic realities of the situation but focuses on the employer's right to control the employee as the most important factor in determining employee status." *Id.* at 37 (citing *Hickey v. Arkla Industries, Inc.,* 699 F.2d 748, 751 (5th Cir. 1983). Other factors to be considered in an employment status determination include:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the 'employer' or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; *i.e.,* by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the 'employer'; (9) whether the worker accumulates retirement benefits; (10) whether the 'employer' pays social security taxes; and (11) the intention of the parties.

*Id.* Furthermore, several circuits have "uniformly held that remuneration in exchange for services is an essential condition to the existence of an employer-employee relationship." *Mathews v. City of S. Bend*, 2013 WL 2149482, at *5 (N.D. Ind. May 16, 2013). *See also Xie v. Univ. of Utah*, 243 Fed. Appx. 367 (10th Cir. 2007) (holding a research associate who received no salary or benefits from the University was not an employee and, therefore, not entitled to relief under Title VII); *York v. Ass'n of the Bar of the City of New York,* 286 F.3d 122 (2nd Cir. 2002) (holding an attorney serving a bar association in an unpaid, volunteer capacity did not have a viable cause of action under Title VII).

Clearly, McCabe's position as a board member in the instant case was a voluntary, unpaid position that was devoid of any traditional employer-employee relationship. In fact, he conceded that he was not provided any remuneration for his services. Furthermore, McCabe's board member duties were not supervised, he did not receive any employment benefits and his

termination from the board occurred after a vote of board members. Therefore, McCabe's Title VII claim fails as a matter of law.

When a plaintiff fails to qualify as an employee under Title VII, he also fails to qualify as an employee under the ADA and ADEA. The retaliation provisions in all three statutes contain similar language. *Id.* In fact, "the ADA, ADEA and Title VII all serve the same purpose—to prohibit discrimination in employment ..." *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.,* 60 F.3d 153, 157 (3d Cir. 1995). The Third Circuit Court of Appeals has held that "precedent interpreting any one of these statutes is equally relevant to interpretation of the others." *Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561, 567 (3d Cir. 2002). Other courts similarly rely on Title VII decisions when interpreting ADA and ADEA retaliation cases recognizing that "[b]ecause the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose-the prohibition of illegal discrimination in employment-courts have routinely used Title VII precedent in ADA cases." *Fox v. Gen. Motors Corp.,* 247 F.3d 169, 176 (4th Cir. 2001). *See also Rhoads v. F.D.I.C.,* 257 F.3d 373, 391 (4th Cir. 2001) (applying Title VII precedent to ADA retaliation claim); *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir. 1997); *McNely v. Ocala Star–Banner Corp.,* 99 F.3d 1068, 1075–77 (11th Cir. 1996) (relying on Title VII jurisprudence to interpret meaning of ADA provisions in a retaliation case), cert. denied, 520 U.S. 1228 (1997)). In *Mariotti v. Mariotti Bldg. Products, Inc.,* 741 F.3d 761, 766 (3d Cir. 2013), the Court rejected the argument that there was a distinction in the definition of the term "employee" because the claim was brought under the ADA rather than Title VII. The *Mariotti* Court explained that the *Clackamas* definition applies to each statute. *Id.*

Moreover, Title VII's definition of employee is the same as the ADEA's in all relevant respects and the analysis to determine whether an individual is an employee is the same under both the ADEA and Title VII. *Haavistola v. Cmty. Fire Co. of Rising Sun,* 6 F.3d 211, 219 fn. 2 (4th Cir. 1993) (internal citations omitted). "A plain reading of the ADEA indicates that an "individual" only has a cause of action under this provision if he is an "employee" at the time of his termination." *Garrett,* 721 F.2d at 980-81 (citations omitted). *See also Fichman v. Media Center*, 512 F.3d 1157, 1161 (9th Cir. 2008) (finding that "[m]ost courts consider the definition of 'employee' to be uniform under federal statutes where it is not specifically defined, including the ADEA and ADA"); *Lutcher v. Musicians Union Local 47,* 633 F.2d 880 (9th Cir. 1980) (Title VII cases construing the term "individual" to mean "employee").

Similarly, it has been well established that a retaliation claim under the ADA requires an "adverse action by the employer either after or contemporaneous with the employee's protected activity." *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir. 1997); *see also Shellenberger v. Summit Bancorp, Inc.,* 318 F.3d 183, 188 (3d Cir. 2003)*; Fogleman,* 283 F.3d 561, 567–568 (3d Cir. 2002); *Cunningham v. Enter. Rent-A-Car Co.,* 2010 WL 724507, at *7 (W.D. Pa. Mar. 1, 2010) *aff'd,* 415 F. App'x 372 (3d Cir. 2010). Thus, an employer-employee relationship must exist to prevail on an ADA retaliation claim.

Finally, Congress created the EEOC to administer and enforce the federal laws, which prohibit employment discrimination to protect employees. 42 U.S.C. § 2000e-4. Although the Court is not bound by the EEOC guidelines, the Court "do[es] afford its interpretation a great deal of deference since Congress charged the EEOC with issuing regulations to implement the ADA." *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 937 (3d Cir. 1997) (citing 42 U.S.C. § 12116; *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S.

837, 844 (1984)).  The EEOC stipulates, "people who are not employed by the employer, such as independent contractors, are not covered by the anti-discrimination laws." *See* U.S. Equal Employment Opportunity Commission, http://www.eeoc.gov/employers/coverage.cfm (last visited August 5, 2015). Furthermore, "[a]ll of the laws [the EEOC] enforce make it illegal to fire, demote, harass, or otherwise "retaliate" against people (applicants or employees) because they filed a charge of discrimination, because they complained to their employer or other covered entity about discrimination on the job, or because they participated in an employment discrimination proceeding (such as an investigation or lawsuit)." *See* U.S. Equal Employment Opportunity Commission, http://www.eeoc.gov/laws/types/retaliation.cfm (last visited August 5, 2015).

Regardless of the statute under which McCabe attempts to assert a retaliation claim, "each requires the existence of an employment relationship." *Lewis v. JP Morgan Chase Bank, N.A.,* 2013 WL 3772325, at *1 (M.D. La. July 16, 2013) *aff'd sub nom. Lewis v. JP Morgan Chase Bank*, 2013 WL 3965370 (M.D. La. July 31, 2013) (citing 42 U.S.C. § 2000e(f) (definition of "employee" under Title VII); 29 U.S.C. § 630(f) (ADEA); 42 U.S.C. § 12111(4)(ADA); EEOC Compl. Man. § 2–III(A) (covered parties)). Accordingly, Plaintiff's claim under Count I is DISMISSED with prejudice and without leave to amend.

### B.  Count II – Violation of First Amendment Rights

McCabe claims that he was wrongfully discharged in retaliation for his expressed support of an employee, which is in violation of his privileges and rights under the First Amendment of the United States Constitution. A plaintiff files a lawsuit to assert his constitutional rights pursuant to 42 U.S.C. § 1983. *Pendrell v. Chatham College,* 386 F.Supp. 341, 346 (W.D. Pa. 1974). A Section 1983 action requires: (1) that the conduct complained of must be committed by

a person acting under color of state law; and (2) the conduct must deprive the person of a federally protected right. *Boykin v. Bloomsburg University of Penn.,* 893 F.Supp. 409, 416 (M.D. Pa. 1995).

It is well recognized, that the Constitution protects citizens from infringement of their rights by the government, not by private parties. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 156 (1978). However, there are exceptions to the state action requirement. "Under the public function exception, a private actor can be held accountable for a constitutional violation when it exercises 'powers traditionally exclusively reserved to the State.'" *Osler ex rel. Osler v. Huron Valley Ambulance Inc.,* 671 F.Supp.2d 938, 943 (E.D. Mich. 2009) (citing *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352 (1974)).

In this case, the "state action" element cannot be met. McCabe acknowledged that Mutual was a nonprofit, private corporation. (ECF No. 8 at 2). To determine whether a private actor has engaged in a state action, the Third Circuit Court of Appeals has outlined the following test: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private entity has acted with the help of or in concert with state officials"; and (3) "whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity". *Monteleone v. United Concordia Companies*, 2010 WL 653928, at *3 (W.D. Pa. Feb. 19, 2010) (citing *Kach v. Hose,* 589 F.3d 626, 646 (3d Cir. 2009)).

"The relevant inquiry under this standard is not just whether the private entity is serving a public function, but whether such a function is 'traditionally the exclusive prerogative of the State.'" *McKinney v. W. End Voluntary Ambulance Ass'n,* 821 F. Supp. 1013, 1019 (E.D. Pa. 1992) (citing *Rendell–Baker v. Kohn*, 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418

(1982)). Thus, the Third Circuit has held that "coordinating medical services under the predecessor to the Pennsylvania Emergency Medical Services Act is not a public function that is traditionally the exclusive prerogative of the Commonwealth of Pennsylvania*." Id.* (citing *Community Medical Center v. Emergency Medical Services, Inc.,* 712 F.2d 878, 882 (3d Cir. 1983)).

Likewise, several other courts have found that providing emergency medical services, even under an exclusive contract, is not a public function. *See, e.g., Krieger v. Bethesda–Chevy Chase Rescue Squad,* 599 F.Supp. 770, 773–74 (D. Md. 1984) (rescue or ambulance service is not a public function), *aff'd without opinion,* 792 F.2d 139 (4th Cir. 1986); *Eggleston v. Prince Edward Volunteer Rescue Squad, Inc.,* 569 F.Supp. 1344, 1350–51 (E.D. Va. 1983) (stating that emergency transportation services are "more akin to private functions that the State may be just beginning to assume than to public functions that are traditionally governmental"), *aff'd without opinion,* 742 F.2d 1448 (4th Cir. 1984); *Williams v. Richmond County, Ga.,* 804 F.Supp. 1561 (S.D. Ga. 1992) (ambulance service operated by private nonpublic hospital corporation not state actor in caring for patient); *Chasse v. Humphreys*, 2009 WL 3334912, at *6 (D. Or. Oct. 13, 2009) (same).

Applying the aforementioned standards, McCabe has failed to establish a "state action" in Mutual's alleged discriminatory conduct under the applicable tests. Mutual is an independent, private, non-profit corporation providing emergency medical response and ambulance services which precedent has established are not public functions. Furthermore, the Board Members of Mutual are neither government officials nor appointed by government officials. Its membership consists of volunteers and it has its own by-laws subject to amendment by its own members.

Accordingly, McCabe's First Amendment violation claim under the U.S. Constitution at Count II fails as a matter of law and is DISMISSED with prejudice.

### C. Count III – Violation of Pennsylvania Constitution's Protection of Free Expression

In Count III, McCabe asserts a parallel claim under the Pennsylvania Constitution. As the Court has dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(c), which states in relevant part "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Thus, Count III is DISMISSED without prejudice to reassert in Pennsylvania state court.

### IV.    Conclusion

For the reasons hereinabove set forth, the Court will **GRANT** the Motion to Dismiss filed by Mutual. An appropriate Order follows.

McVerry, S.J.

| | |
|---|---|
| **JOHN D. McCABE,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  **2:15-cv-00562-TFM** |
| | ) |
| **MUTUAL AID AMBULANCE SERVICE, INC.,** | ) |
| **Defendant.** | ) |
| | ) |
| | ) |

## <u>ORDER</u>

AND NOW, this 7th day of August, 2015, in accordance with the foregoing

Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that Defendants'

MOTION TO DISMISS (ECF No. 4) is **GRANTED**. The Complaint is dismissed in its entirety,

without leave to amend. The clerk shall docket this case **CLOSED.**


BY THE COURT:

s/Terrence F. McVerry
United States District Judge


cc:    **Zan Ivan Hodzic**
Email: z.hodzic@hodzicporach.com

       **Thomas H. May**
Email: tmay@dmclaw.coom


       (via CM/ECF)